The City of Delphi *v.* Evans.

————————————●————————————

THE CITY OF DELPHI *v.* EVANS.

STREET IMPROVEMENTS.——*Authority to Make.—Consequential Damages.*——
The authorities of towns and cities have ample power to lay out, open, grade, regrade, level, and pave or gravel streets and alleys, and to establish drains and sewers, culverts, and embankments, whenever they are necessary for the improvement of such streets and alleys; and where the work is done with proper care and skill and without malice, the town or city will not be liable for any consequential damages that may result therefrom.

SAME.—*City.—Appropriation of Real Estate.—Damages.*—Where the land of the citizen is not actually appropriated in the making of such improvements, the owner is not entitled to have the damages first assessed and tendered; but where it becomes necessary in making such improvements to appropriate and use the real estate of a citizen, his damages must be first assessed and tendered.

SAME.—*Proceedings Required.*—The improvement may be under an ordinance, a motion, or resolution, but whatever mode may be adopted, it must comply with the requirements of the charter. It must be in writing, and where there is a petition for the improvement, it must be passed by a vote of a majority of the council, or by a two-thirds vote where there is no petition. The order made must be entered of record, together with the vote on its passage, showing that it was adopted by the requisite vote, and this order must be followed by an advertisement for proposals to do the work, and there must be a written contract made and reported to, and approved by, the common council.

SAME.—*Power of Council to Establish Grade.*—The common council of a city has the right to establish the grade of a street, and may cause the same to be excavated at one point and filled at another, and the earth, gravel, or stone excavated at one point may be used in making a fill at another point in said street.

SAME.—*Improvement of more than one Street.*—Where the common council has taken the proper steps for the improvement of a particular street, it has no power to order the cutting down of another street, where no improvement is authorized, for the purpose of obtaining gravel or dirt to make the improvement contemplated. But where the council has established the grades of different streets and has ordered their improvement in conformity

to the grades established, the earth, gravel, and stone excavated on one street so ordered to be improved may be used in filling up a low place in another street where such improvement is authorized. In such case the excavation in the one street and the fill in the other are each for the improvement of the respective streets.

SAME.—*Removal of Earth from Streets.*—*Liability of City for Damages.*—A. being the owner of lots bounded by two streets, in a city organized under the general law for the incorporation of cities, the common council contracted with B. to make a fill of earth upon another street in said city not contiguous to said lots, and ordered and permitted the contractor to remove earth from a part of one of the streets along the line of said lots, to make such fill, such earth not being required or used for the improvement of the streets along which the lots were located, and the removal thereof greatly injuring said streets and damaging said lots. No order had been made or ordinance adopted by the common council for the improvement of the street to which the earth was taken, prior to the contract or the removal of the earth.

*Held,* that the owner of the lots could maintain an action against the city for the injury resulting to the lots from the removal of said earth.

APPEAL from the Carroll Common Pleas.

BUSKIRK, J.—The only error assigned and relied upon by the appellant is, that the court erred in overruling a demurrer to the complaint. The complaint was in two paragraphs. The second contained all that was in the first, and also some allegations that were not in the first paragraph.

The second paragraph was in these words: "And the plaintiff further says, that he is the owner and holds possession of lots numbered 4 and 5, in Wilson's addition to the said city of Delphi, and was such during the entire year of 1867; that said lots are bounded on the east by Wilson street, and on the south by Frank street; that Frank street terminates on the east at Wilson street; that some time in the year 1867 the mayor and common council of the city of Delphi, in the county aforesaid, contracted with Joseph Polk and John Harrison to make a fill of earth upon Washington street in said city, and ordered and permitted them to take the earth for that purpose from the east end of Frank street; that at the time, there was a regular descending grade from the south end of plaintiff's lots to about the middle of Frank street, south of which, in said Frank street, there was a level track into Wilson street; that the earth beneath said descent

was firm and solid, and was not affected by washing, rains, freezing, or thawing; that in accordance with said contract, said Polk and Harrison did, during the months of September, October, and November, 1867, cut, dig, and haul away a large quantity of earth therefrom, to wit, the entire width of plaintiff's lots, one hundred and twenty feet; also the alley on the west, twelve feet wide, and west thereof more than one hundred feet, cutting away a part of the sidewalk of said plaintiff, leaving a perpendicular bank at the ends of plaintiff's lots twelve feet deep, and on Wilson street five feet deep; that there were no commissioners appointed by said common council and duly qualified, whose duty it was to value the land and other property thus appropriated; that no notice was given plaintiff by said common council, or by any person for them, that they intended to appropriate said land, or to any person whatever; that no valuation of the same was made, nor injury or benefit assessed, and no report made of the same, as is required by the statute in such case made and provided; that the same was not done for the construction, repair, or benefit of Frank and Wilson streets, but was a great and material injury to the same, by reason of which, and on account of the condition of said banks, the earth, from rain, freezing, and thawing, has crumbled and fallen until it has greatly destroyed plaintiff's sidewalk, wrecked his fence, rendered traveling upon said street much more inconvenient, and done other and further damage to his said property, by means of which his said property has been reduced in value to a large amount, to wit, to the sum of five hundred dollars. He therefore demands judgment for one thousand dollars, and other proper relief.

It is alleged in the complaint that the appellee was the owner, and resided upon lots four and five in Wilson's addition to the city of Delphi; that such lots were bounded on the east by Wilson street, and on the south by Frank street; that the mayor and common council contracted with Joseph Polk and John Harrison to make a fill of earth upon Washington street, and had ordered and permitted such contrac-

tors to take earth from the east end of Frank street to make such fill; that the earth removed was not required or used for the improvement of Wilson or Frank streets, but greatly injured said streets and damaged the property of the plaintiff; that no order had been made, or ordinance adopted, by the common council for the making of improvements in Washington, Wilson, and Frank streets, or either of them, prior to the making of said contract with the said Polk and Harrison, and prior to the removal of the earth from the said street in front of the property of the plaintiff.

It is admitted by the learned counsel for the appellants, in their brief, that the judgment of the court below was correct, if the facts stated in the complaint constituted a good cause of action, but it is earnestly maintained that upon the facts stated, the city was not liable for any injury that may have resulted to the plaintiff from the removal of said earth. The position assumed by the appellant is, that the mayor and common council of said city possessed ample power and authority to lay out, open, grade, level, and pave the streets of such city, and that in so doing they had the right to appropriate and remove the earth from the street in front of the property of the plaintiff, to make the fill in Washington street; and that the city was not liable for any consequential damage that might result; and in support of this position reference is made to the following decisions of this court: *Snyder* v. *The President,* etc., 6 Ind. 237; *Wood* v. *Mears,* 12 Ind. 515; *Macy* v. *The City of Indianapolis,* 17 Ind. 267; *The City of Indianapolis* v. *Imberry,* 17 Ind. 175; *The City of Lafayette* v. *Bush,* 19 Ind. 326; *The City of Vincennes* v. *Richards,* 23 Ind. 381.

The object of the suit in *Snyder* v. *The President, etc., supra,* was to enjoin the authorities of the town of Rockport from extending a street from the top of the bank on the Ohio river down to the water in said river so as to make a wharf. It was alleged in the complaint that the town of Rockport is situated upon the bank of the Ohio river, seventy-five feet above the water; that the main street of said town, ninety-

five feet wide, extends from the river outward, descending somewhat as it extends; that the plaintiffs own the lots upon said street on the river bluff, and that the trustees of the town are about to have said main street graded, filling the end back from the river and cutting down the end upon the river, through the bluff of seventy-five feet, so as to open a communication, by said street, between the town and the river, and also furnish a landing for steamboats, etc., at its termination. The injunction was asked upon the grounds, that the proposed improvement would greatly injure the property of the complainants; that the corporation did not propose to pay, and was unable to pay the damages which would result to complainants; and that the project, if carried into effect, would be of no utility.

The trustees of said town had made an order for the making of such improvement, and there was no objection urged to the regularity of the proceedings. This court say: " As to compensation for the injury which the grading of the street may work to the property of the plaintiffs, they are entitled to none on general principles of law. This is well settled. If the trustees were proceeding in violation of law, and negligently and wantonly prosecuting the work to their detriment, the case would be different; but where a street is graded pursuant to legal authority, and in a careful manner, the adjoining owners of lots have no right to compensation for consequential damages to their lots, unless expressly given by statute; and in that case the compensation must be sought in the manner prescribed by the statute."

The case of *Wood* v. *Mears, supra,* is not in point. That was an action by Mears to recover from Wood damages for injuries done to his horse and buggy by driving over a pile of dirt that Wood had placed in the street. The defense of Wood was, that he was about to build a house on said street, and that he had placed the earth and gravel in the street to be used in such building. The court discusses with marked ability the correlative rights of the public in the streets of a

town or city, and of the owners of lots abutting on such streets.

· We will examine the case of *The City of Indianapolis* v. *Imberry, supra,* in a subsequent part of this opinion.

The questions involved in the case of *Macy* v. *The City of Indianapolis, supra,* were these: first, can the common council of a city, after they have once established the grade of a street, and after adjoining lots have been improved in conformity to such grade, cause the street to be regraded? Second, if so, can they cause it to be done without first having the consequential damages, resulting from such change in the grade to adjoining proprietors, assessed and tendered to them? This court held, that the grade of a·street in a city might be changed, and that the city was not liable for any consequential injury resulting to the adjoining proprietors.

The case of *The City of Lafayette* v. *Bush, supra,* was an action by the plaintiffs against the city, and those acting under her authority, to enjoin the city and certain contractors from using and appropriating certain lots of Mrs. Bush, to the purposes of a street, no compensation having been assessed and tendered. The court, after reaffirming the principles enunciated in the case of *Macy* v. *The City of Indianapolis, suprā,* say: " Such, however, is not the case before us. Here the city is appropriating parts of the lots of Mrs. Bush to the purposes of a street, and digging and excavating them for that purpose. Provision is·made for assessing and tendering damages in such cases, and the city cannot thus appropriate the property of the plaintiff without first complying with such provision."

In *The City of Vincennes* v. *Richards, supra,* the appellee sued the appellants, alleging that he owned and resided upon a certain half lot in the city of Vincennes; that the city, by erecting and maintaining divers culverts, embankments, ditches, water ways, grades, and excavations upon certain streets of the city, caused the waste water, which before had

been accustomed to flow elsewhere, to be diverted from its natural channels and thrown upon the appellee's lot.

The city answered, in substance, that such city was incorporated under the general laws of the State; that the common council had ordered the streets mentioned in the complaint to be graded and improved; that in pursuance of such order, it did erect and still maintains said culverts, etc.; that the work was done in a careful and proper manner, and, in the judgment of the common council, was necessary and proper; and that the damages, if any, were the necessary consequence of said improvements, and were not caused by any neglect or carelessness, etc.

The court held that the statute (1 G. & H. 231) gives the city full power to do what it is alleged to have done in the improvement of the streets. The court say: "It has full authority to repair the streets and construct drains and sewers. If it does this with proper skill and care, and without malice, as the paragraph alleges, in substance, and consequential injury results to the citizen, he has no remedy, and the fault, if any, is in the law, which we must declare as we find it to exist."

We are of the opinion that the foregoing authorities establish the following propositions:

1. That the authorities of towns and cities have ample power to lay out, open, grade, regrade, level, and pave or gravel streets and alleys; to establish drains and sewers, culverts and embankments, whenever they are necessary for the improvement of such streets and alleys; that where the work is done with proper care and skill and without malice, the town or city will not be liable to a citizen for any consequential damages that may result therefrom.

2. That where the land of the citizen is not actually appropriated in the making of such improvements, the owner is not entitled to have the damages first assessed and tendered; but where it becomes necessary, in the making of such improvements, to appropriate and use the real estate of a citizen, his damages must be first assessed and tendered.

But we do not regard the foregoing propositions as deci--sive of the case under consideration, for in all of the above cases an order had been passed by the municipal authorities for the making of such improvements; and it therefore remains for us to inquire and determine whether the mayor and common council of the city of Delphi possessed the power to make the contract with Polk and Harrison before the common council had ordered such improvement to be made.

So much of section 68 of the act of incorporation of cities as applies to the question under discussion reads as follows:

"Sec. 68. When the owners of two-thirds of the whole line of lots or parts of lots (and measuring only the front line of such lots as belong to persons resident in such city) bordering on any street or alley, consisting of one whole square between any two streets crossing the same, of [or] if the common council deem it expedient, for any reasonable distance upon any square or alley, less than one whole square or block, shall petition the common council to have the sidewalks graded and paved, or the whole width of the street graded and paved, or for either kind of improvement, or for lighting such street according to the general plan of such improvement in said city, the common council may cause the same to be done, by contracts given to the best bidder, after advertising to receive proposals therefor; and the common council shall have power to compel the owner or owners of a lot, or a part of a lot, on any street or alley, or upon any part of a street or alley, to repair the sidewalks in front of their respective lots or parts of lots; and in case the owner or owners of any lot or a part of a lot, or any street or alley or any part thereof, fail or refuse to repair the sidewalks in front of their lots, the common council may cause such repairs to be made by the street commissioner, at the cost and expense of the owner or owners of such lot or lots; and the city shall have a lien on such lot or lots for the reimbursement to her of the cost of such improvement,.

and the common council are hereby invested with full powers to pass by-laws and ordinances providing how and in what manner the repairs shall be made, and in what manner the same shall be assessed and collected from such owner or owners, and the manner in which the lien of the city for the expense incurred by her may be enforced against the lot or lots of such owner or owners."

Section 71 of said act prescribes the manner in which assessments made for said street improvements shall be collected when the owners of lots refuse to pay. It provides for the issuing of a precept, from which an appeal may be taken to the common pleas court. The said section contains the following provision:

"The clerk shall, upon the filing of said bond, forthwith make out and certify, under his hand and official seal, a true and complete copy of all papers connected in any way with the said street improvement, beginning with the order of the council directing the work to be done and contracted for, and including all notices, precepts, orders of council, bonds, and other papers filed in said manner, which transcript shall be in the nature of a complaint, and to which the appellant shall answer upon rule, and in case the court and jury shall find upon trial that the proceedings of said officers subsequent to said order directing the work to be done are regular, that a contract has been made, that the work has been done, in whole or in part, according to the contract, and that the estimate has been properly made thereon; then said court shall direct the said property to be sold and conveyed by the sheriff thereof, as the said treasurer is hereinafter directed to sell and convey property liable to street improvements."

It is very apparent, from the language used in sections 68 and 71, that there must be an order made directing the work to be done. After the order is made, there must be an advertisement for the proposals for doing the work, and after such advertisement, there must be a contract in writing for the doing of the work as ordered. But there can be no valid and legal contract made until an order has been made by

the common council, and there has been an advertisement for proposals for doing the work.   Any contract that may be entered into, without such order having been made and advertisement published, would be illegal and void.   The making of the order for the improvement is a judicial act, which may result in depriving citizens of their property, and should be made with due formality and entered of record.   The decisions of this court, as to the form of the order, the manner of its adoption, and the necessity of its being entered of record, are not uniform and consistent, but all agree that there must be an order passed.   It was held by this court in *The City of Indianapolis* v. *Imberry*, 17 Ind. 175, that it need not be by ordinance, but might be by motion or resolution, and that it need not be entered of record.   The court say: "By the charter, the council has jurisdiction over the streets and alleys of the city, with power to provide for their improvement and repair.   It has power to order them graded and gravelled or paved.   It may do this, first, upon the petition of freeholders, according to section 66 of the charter, by a majority vote; second, by a two-thirds vote of the council, without a petition, according to section 68 of the charter.   It does not appear, nor is it necessary that it should, in this case, whether there was a petition or not.   The manner in which the order or determination of the council, that a given street or alley, or part thereof, shall be improved, is to be expressed, is not pointed out in the paramount law, but we think it need not be by ordinance.   We think it may be expressed by motion or resolution."

In a subsequent part of the opinion it is intimated that the order might be proved by parol.   There is no doubt that this might be done where the order had been made, entered of record, and destroyed.

It was said by this court, in *The City of Logansport* v. *Wright*, 25 Ind. 512, that "An ordinance of a city corporation directing the construction of a work, within the general scope of its powers, is a judicial act, for which the corpora-

tion is not responsible; but the prosecution of the work is ministerial in its character, and the corporation must therefore see that it is done in a safe and skilful manner."

It was held by this court, in *The City of Indianapolis* v. *Miller*, 27 Ind. 394, that such "a power is legislative in its character, and can only be exercised by an ordinance passed under the formalities required by law."

We do not regard the name or form of the order as of the substance of the thing. It may be done by an ordinance, by a motion, or resolution; but whatever mode may be adopted it must comply with the requirements of the charter. It must be in writing. It must be passed by a vote of a majority of the council when there is a petition, or by a two-thirds vote when there is no petition. The order must be entered of record, together with the vote on its passage, and the record must show that it was adopted by the requisite vote. The order must be followed by an advertisement for proposals to do the work. There must be a written contract, which must be reported to and approved by the council.

In the case under consideration there was no order made for making the improvement. There was no advertisement for proposals for doing the work. There was no written contract. It necessarily and unavoidably results that the city cannot be protected from liability on the ground that it was a proceeding under the charter. It was acting in violation of law. It was a trespasser, and is liable for its acts as such.

But suppose that the common council of said city had made an order, in due form of law, for the improvement of Washington street, had advertised for proposals, and had entered into a valid and legal contract for the making of such improvement, would such things be a justification of the acts complained of? We think not. The common council of a city has the undoubted right to establish the grade of a street, and may cause the same to be excavated at one point and filled at another; and the earth, gravel, or stone

excavated at one point may be used in making a fill at another point in the said street.

But the real and substantial question in the case under consideration is this: Had the common council the power to order or direct the cutting down of Frank street for the purpose of obtaining dirt or gravel with which to fill up Washington street? We think they possessed no such power. The owners of lots abutting on streets and alleys have an interest in them; and the right to their use as they were when they purchased the adjoining lots, subject to the paramount power of the common council, in the mode hereinbefore pointed out, to improve them, by establishing grades and making the improvements to correspond with the grades established. It is provided by section 68 of the charter, that "the common council are hereby invested with powers to pass by-laws and ordinances providing how and in what manner the repairs shall be made, and in what manner the same shall be assessed and collected from such owner or owners."

The above is a just and reasonable provision. It is alike just to the public and the owners of lots. There must be a plan of improvement adopted, and when this is done, the public and the private citizen will know their rights. We think that it is quite clear that the authorities of a city have no power to order the removal of earth, gravel, or stone from a street, unless it is done in pursuance of an order for the improvement of such street. If the common council of Delphi had established the grades of Washington and Frank streets in such city, and had made an order for their improvement in conformity to the grades established, there can be no doubt that the earth, gravel, and stone excavated in Frank street might have been used in filling up a low place in Washington street. By so doing the common council would have exercised the power they possessed over the streets and alleys of such city, and the excavation in Frank street would have been made as much for the improvement of that street as the fill in Washington street

would have been for the improvement of the latter street.

It appearing from the allegations of the complaint that the common council of the city of Delphi had made no order establishing the grades and ordering the improvement of Washington, Wilson, and Frank streets; that the excavation was not made in Frank street for the improvement of such street; and that the work was not done in a careful and skilful manner, but that the same injured the street and damaged the property of the plaintiff, we are of the opinion that the court committed no error in overruling the demurrer to the complaint; and this being the only error assigned, it results that the judgment must be affirmed.

The judgment is affirmed, with costs.

*B. B. Daily, D. H. Graham, S. E. Perkins, O. F. Baker,* and *S. E. Perkins, Jr.,* for appellant.

*L. B. Sims* and *A. H. Evans,* for appellee.