J. B. PRICE ET AL., APPELLANTS, *v.* LEVI KNOTT AND
A. J. KNOTT, RESPONDENTS.

ACT OF THE LEGISLATURE CONSTRUED—FERRY FRANCHISE.—The act of the
legislature of the late territory, passed January 15, 1852, granting a
ferry right to James B. Stephens across the Willamette river, at Port-
land, granted but one ferry, with fixed landings on each side of the river.
The exclusive right to said Stephens to do all the ferrying across said
river, within certain limits, for ten years, expired at the end of said ten
years.

IDEM.—One ferry consists of one line of boats on one line of travel. The
owners of this franchise, having a line of boats running as a ferry from
Stark street to a point opposite in East Portland, the right to run this
ferry does not grant them a right to run another line of boats from Oak
street to a point opposite in East Portland.

STREETS—WHAT GRADE CITY MAY ESTABLISH.—The authorities of the city
of Portland have control of the grading of the streets of the city, and
may grade them down or elevate them when they approach the river, as
the exigences of travel or commerce shall require.

INJUNCTION—ADJACENT LOT OWNER MAY SUE OUT, WHEN.—One own-
ing a lot next to the river may lawfully claim an injunction against a
private citizen who threatens to grade down a street next to the river,
and adjoining the lot of such owner, if he shows in his complaint that
such grading will permanently injure his improvements on said lot, or
render its enjoyment less convenient.

APPEAL from Multnomah County.

This is a suit in equity, brought by plaintiffs to restrain
defendants from digging or altering the ground or grade of

Oak street, between the east line of Front street and the Willamette river, in the city of Portland, and further asking that the defendants be enjoined and restrained from, in any manner whatever, interfering with, changing, injuring, or destroying certain roadways and a wharf erected by the plaintiffs, Rines and Newhouse, for the purpose of a woodyard, upon and in front of the south half of said portion of Oak street; and for one hundred dollars damages for the injury already done plaintiffs by digging down said street by defendants.

The plaintiffs rest their cause of suit substantially upon the facts: That Rosetta Sherlock is the owner of the south half of lot four, in block eighty-one, lying immediately north of said portion of Oak street; that J. B. Price is the owner of lot one, in block eighty, lying immediately south of said portion of Oak street, and that Rines and Newhouse are lessees of said Price, of the rear or river end of said premises, and that they have constructed a wharf in the river opposite said premises and extending north in front of the street to the center line of said Oak street extending into the river, and have built two roadways leading to said wharf; that they built said wharf and roadways by permission of the common council of the city of Portland, as per ordinance No. 1911; that if said portion of Oak street between the east line of Front street and the Willamette river is graded down to the water line of the river, the foundation walls of the buildings occupying the ground on either side of that portion of said street will be injured; that Rosetta Sherlock contemplates building a wharf in the rear of her property, and extending into the river, and if the street be so graded, she, upon the one side, and J. Price and Rines and Newhouse upon the other side of the street, will be deprived of access to their several wharves from the foot of Oak street.

Rines and Newhouse also complain of defendants for attempting to dig and to tear down and destroy said roadways therein and the wharf in front of the south half of said street. It is sufficient to state that no actual damage has been shown to have been sustained by the digging, etc.,

heretofore done by the defendants, the object of defendants in digging, etc., being to test the validity of Ordinance No. 1911, and to ascertain, by the decision of the courts, the respective rights of plaintiffs as adjoining property holders, and the power of the municipality to grant the easement of public streets to the exclusive use and benefit of private individuals. The defendants claim the right to use the foot of the street as a ferry landing, under a charter of the legislature of the territory of Oregon passed January 17, 1852, and as an incident to that franchise, the right to grade down the street so as to make it suitable for such landing. That the accommodation of public travel over the Willamette river requires that they should use the terminus of Oak street as a ferry landing. They also present, as a separate and independent defense, their right as members of the general public to travel over the said street, and they complain that said wharf and roadway so erected are nuisances, and may be abated by any one desiring to use said portion of said street as a highway.

Upon the trial below, the court there found: That Oak street in the city of Portland extending to the Willamette river is a public highway, and that the wharf and roadway situate in the foot of said street is an obstruction to said highway. That defendants are the owners of the ferry franchise, and have good right and authority to land their ferry boats at the foot of said Oak street, and to so grade the foot of said street as to render the same a suitable roadway, between Front street and the Willamette river, for all purposes of public travel, and had the right to remove said wharf and roadways. And thereupon dismissed plaintiffs' suit.

*Dolph, Bronaugh, Dolph & Simon, and Wm. Strong & Sons*, for appellants.

*H. T. Bingham*, for respondents.

By the Court, BOISE, J.:

The defendants, A. J. and Levy Knott, claim the right to grade the foot of Oak street, in the city of Portland, to

make it convenient to be used by them as a ferry landing for their ferry which plies across the Willamette river, betweet West and East Portland. They now have one fixed landing for their ferry, at the foot of Stark street, which is the next street south of said Oak street, and about two hundred feet from it. But they claim that the increase of business on their ferry requires additional means of transportation, and that to accommodate the travel, they want to put on another line of boats, and make a landing at said Oak street. The ferry franchise under which the Knotts' claim was granted to James B. Stephens, by an act of the legislature of the late territorial government of Oregon, and they have the right by purchase from Stephens, and claim that under this franchise they have the exclusive right of ferriage for one mile each way up and down the river from their present landing at said Stark street. The appellants claim that the Knotts have a right to only a single ferry and one line of boats, and if they wish to establish another line, they must get the right to do so by a license from the county court under the general law regulating ferries in this state.

It becomes necessary, therefore, for us to construe said act of the territorial legislature to determine the extent of the franchise granted by it. The act is as follows:

"An act to authorize James B. Stevens to establish a horse or steamboat ferry across the Willamette river.

"Section 1. Be it enacted by the legislative assembly of the territory of Oregon: That James B. Stephens, his heirs and assigns, be and they are hereby authorized to establish and keep a ferry across the Willamette river at the city of Portland, in Washington county, to the county of Clackamas, on the east side of said river, opposite, within the following limits: Commencing at a point in said city of Portland, at the junction of —— street, the present ferry landing of said Stephens, and to land on, and deposit, from, each shore of said river, as well in the county of Clackamas, due east of said point of commencing, as in the county of Washington, and extending from said points up and down said river, on each side thereof, one mile each way;

and that the said James B. Stephens has the exclusive privilege of ferrying in Washington and Clackamas counties, within the above limits, for the term of ten years from the passage of this act. *Provided,* that said ferry, when so established, shall be subject to the same regulations and under the same restrictions as other ferries are, or may hereafter be, by the laws of this territory fixing the rates of toll, and prescribing the manner in which licensed ferries shall be kept and regulated.

"Sec. 2. That no courts or board of county commissioners shall authorize any person, except as hereinafter provided for in this act, to keep a ferry within the limits set out in this act. *Provided,* that the said James B. Stephens, his heirs or assigns, shall, within eighteen months after the passage of this act, procure for said ferry a good and sufficient horse or steam ferry-boat, which shall be kept at said ferry for the transportation of all persons and their property across said river, without delay, and until said ferry-boat shall be provided as aforesaid, the said James B. Stephens shall keep at said ferry a good and sufficient number of flat boats, with a sufficient number of hands to work the same for the transportation of all persons and their property across said river (when possible) without delay; and should the laws regulating ferries now, or such as may hereafter be in force, be violated by the said James B. Stephens, his heirs or assigns, or if no good and sufficient horse or steam ferry-boat be provided at the time required by this act, upon proof thereof to be made to the satisfaction of the board of county commissioners, or probate courts of the counties of Washington and Clackamas, then this act shall be void.

" Sec. 3. This act to take effect and be in force from and after its passage.

"Passed the house of representatives, January 15, 1852.

"Passed the council, January 17, 1852."

We are not authorized in construing this act to extend the grant in favor of the grantee beyond the fair and natural meaning of the language used, for when the legislature grants a franchise which is in the nature of a monopoly, and which, necessarily to some extent, restricts the powers of

future legislatures, nothing is to be presumed beyond the express words of the grant.    Cooley's Constitutional Limitation, 394.

In this case the manifest intention of the legislature was to grant to Stephens a right to keep a ferry from certain fixed points, and provided that said ferry, when so established, should be subject to the same regulations as other ferries are, as to rates of toll.    The act grants but one ferry, and if the exclusive right of ferrying for ten years within the limits of two miles, had in that time required more than one ferry to do the business,  such other ferry would have been subject to the regulations imposed on other ferries. But this exclusive right does not need construction, for it was limited to ten years, and has long since ceased to exist, and since the expiration of ten years from the date of the act, the Knotts have had but one ferry right under this act, and that is confined to the landing on Stark street.    As is said in the case of *Mills* v. *Learn*, 2 Or. 217.    " The ferry is a part of the road and the landings are upon the highway and within its limits," and the proprietor can not change it from one street or highway to another, without the authority of the county court.

So we conclude that under this act the Knotts had no authority to grade down the foot of Oak street, and can not therefore justify under that authority.    We will next consider the question whether the plaintiffs, from the facts alleged, have a standing in court to claim an injunction against the Knotts in this suit.    They claim, 1.  " That being the owners of the adjoining lots, they are thereby made the owners of the street, each to the center; 2. That they have a right to occupy the street or a part thereof under the authority or license from the city authorities; and 3. That if these propositions are not correct, they have the right to have the defendants restrained from altering the grade of the street so as to render access to their property more difficult."

The first of these propositions is simply a question of law and we think it is not necessary to decide it in this case,

and as it was not very fully discussed we will not express an opinion thereon at this time.

As to the second proposition, as to the power of the city to·grant a license to occupy the street by the plaintiffs with their roadway, we think the city authorities have under the charter full power to grade down or build up the streets, so as to facilitate travel or contribute to the convenience of landing from boats and vessels. But we do not wish to be understood as holding that the city authorities can confer any rights of property in the streets on private individuals, or incumber them with licenses to adjoining lot holders, to the detriment of the general public, for they hold the control and management of the streets for the benefit of the public. As to the third proposition, that the plaintiffs have a right to claim that the defendants be restrained from altering the grade of the streets so as to render access to their adjoining property less convenient, we think they have that right, and that no one other than the city can alter the grade of the street to their injury, and that any adjoining proprietor may invoke the aid of the court to prevent the grading of a street whereby this property is made much less secure as to his improvements, or made less convenient of access. And we think the acts complained of were such as would injure the plaintiff's property. (High on Inj. 408; *Shurmier* v. *St. Paul,* 10 Minn. 82; *City of Delphi* v. *Evans,* 36 Ind. 90.)

We think, therefore, that the defendants should be enjoined from interfering with or altering the grade of the foot of Oak street, and that a decree should be entered to that effect.