No. 8330.

CHAMBERLAIN v. THE CITY OF EVANSVILLE.

CITY.—*Street Improvement.—Ordinance.—Charter of Evansville.—Amendment.—Statute Construed.*—The 58th section of the special charter of the city of Evansville, taken in connection with sections 2 and 30 (Local Laws 1847, p. 3), fully authorized the common council, by ordinance, to provide in detail a method of procedure for the improvement of streets, a mode of assessing the expense upon abutting property, and to enforce payment thereof. Such ordinances were not repealed or impaired by the act of 1875 (Acts 1875, p. 70), amending sec. 58, only in so far as they were inconsistent with the amendment.

MUNICIPAL CORPORATION.—*Nunc Pro Tunc Entry.*—A municipal corporation, like a court, has authority to make an entry of record *nunc pro tunc* to supply a clerical omission; and when made such entry operates as if made when the fact so entered actually occurred.

From the Vanderburgh Circuit Court.

*A. Iglehart* and *J. E. Iglehart*, for appellant.
*C. Denby* and *D. B. Kumler*, for appellee.

FRANKLIN, C.—Appellee sued appellant to recover assessments for street improvements made in front of appellant's property, and to have them declared a lien upon said property, in the city of Evansville. The complaint was in two paragraphs; appellant demurred to each separately; demurrers overruled, and appellant answered in two paragraphs;

demurrer sustained to the second, the first being a denial; trial by court and finding for appellee; motion for a new trial overruled, and judgment on the finding; exceptions were properly reserved to each of these rulings.

The errors assigned in this court are, overruling the demurrers to the complaint, and each paragraph thereof; the sustaining of the demurrer to the second paragraph of the answer; the overruling of the motion for a new trial.

Twelve of the reasons assigned for a new trial were based upon the admission of alleged irrelevant, immaterial and incompetent testimony, and consisted in objections to the introduction of the different parts of the record of the proceedings of the city council in relation to the street improvements. Under this assignment of errors, counsel have raised and discussed the following questions: Was there any ordinance in existence authorizing the city to make the improvements? If so, was it valid? Had the city council authority to make a *nunc pro tunc* order charging the assessments upon the property?

The city government of Evansville is under a special charter, and not under the general law of the State for the government of cities. This special charter was passed by the Legislature in 1847. See Local Laws of that year. Under the 58th section thereof, the common council, in 1859, passed an ordinance which in detail points out the method of procedure whereby improvements shall be made, the mode of assessing the same upon adjoining property, and for the enforcement of the payment thereof. In 1875 the Legislature passed an amendatory act amending the 58th section of the original charter, extending the remedy for the collection of assessments by authorizing suit to be brought to enforce and foreclose the lien of the assessments upon the property, as well as to sell by advertisement, without any judicial proceedings, as provided for in the original section.

Under this amendment, no new and general ordinance was passed upon this subject. The improvements were made in the fall of 1876, under the amended charter, and appellant's counsel insist that the amendment of the 58th section of the charter annulled the original section; that the amended section alone was in force, and became a part of the original charter, and thereby rendered nugatory the ordinances which had been passed under the original section.

While it is a correct proposition, that the amendment of a section of a charter annuls the section amended, does it necessarily follow that, in municipal corporations, an ordinance passed under the original section is thereby also rendered nugatory? This is somewhat similar to the adoption of a new constitution, and can it be seriously contended that, by the adoption of a new constitution, all the laws passed in pursuance of the old are thereby abrogated and rendered null and void? It would doubtless repeal by implication any law that was inconsistent with or in conflict with its provisions; but laws passed under the old, which were in harmony with the provisions of the new, would remain in force the same as though no new constitution had been adopted.

In the case of Cass v. Dillon, 2 Ohio St. 607, Justice THURMAN uses the following language in reference to the effect of the adoption of new constitutions: "It follows, that all laws in force when the latter took effect, and which were not inconsistent with it, would have remained in force, without an express provision to that effect; and all inconsistent laws fell, simply because they were inconsistent; in other words, all repugnant laws were repealed by implication."

In the case of The State, ex rel. Evans, v. Dudley, 1 Ohio St. 437, it was held that, "As repeals by implication are not favored, the repugnancy between the provisions of two statutes must be clear, and so contrary to each other that they can not be reconciled, in order to make the latter operate a repeal of the former. This rule is the result of

a long course of decisions, and we know of no reason why it does not equally apply, when the repugnancy is alleged to exist, between a constitutional provision and a legislative enactment."

The charter of a city assimilates itself to the constitution of a State, and the ordinances under the charter, to the legislative enactments under the constitution. And if the change of a constitution does not thereby change the existing laws that are in harmony with it, the change of a city charter does not thereby change the existing ordinances that are in harmony with the changed charter. Dillon on Municipal Corporations, secs. 52 and 53; *City of Olney* v. *Harvey*, 50 Ill. 453; *The City of Maysville* v. *Shultz*, 3 Dana, 10; *People* v. *San Francisco*, 21 Cal. 668.

It is not insisted that this ordinance was inconsistent with or repugnant to the amended charter. And therefore under the foregoing authorities this ordinance remained in force under the amended charter.

But it is insisted by appellant's counsel that under the original charter the common council had no power to pass the ordinance; that the original section 58 of the charter only authorized ordinances for the enforcement of the collection of the expenses of the improvements, and that it did not confer upon the council any power to pass an ordinance pointing out the method of making the assessment. And therefore such ordinance was not authorized or even justified; and such ordinance passed before the passage of the amendment under which the action is brought was nugatory and void, and there was no foundation for the action.

The original 58th section contained the following clause: "It shall be the duty of the common council to cause such improvements or repairs to be made in the best and most economical manner, and the expenses thereof shall be assessed and charged against all the lots and parts of lots fronting on or adjoining the street or part of street, alley or part of

alley so improved or repaired as aforesaid.'' And, after providing for the petitioning and the ordering of the improvements to be made, it contains the further clause : ''And the common council may provide by general ordinance for the collection of the costs and expenses of any such repairs and improvements.'' And it provided also that the common council might order and require any and all such improvements and repairs of streets and alleys to be made without petition, and either charge and cause all or any part of the expenses thereof to be collected as above in this section provided, or cause such expense or part thereof to be paid out of the general revenue of the city. And that the word ''street'' or ''streets'' should include sidewalks.

And this original charter contained other provisions on this question as well as those contained in the 58th section. See Local Acts of 1846–7, p. 10; sec. 30. This section provides : ''The common council shall have the control and management of the finances, and of all the property, real and personal, belonging to said city, and shall have full power and authority for and within said city, to make, establish, publish, alter, modify, amend, and repeal, by-laws, ordinances, rules, and regulations, for the following purposes and on the following subjects, to wit: * * * *Thirty-ninth.* To regulate the streets, alleys, and sidewalks, and all improvements and repairs thereof ; and the said common council shall have the exclusive right and power of taxing persons residing in said city, and real and personal property situated therein, for the purpose of making such improvements and repairs, whether such improvements or repairs consist of grading, paving, ditching, or anything else.''

Said section 30 enumerates the powers granted to the council ; and said 39th clause fully and unequivocally gives the council the right to make, establish and publish ordinances regulating the improvement of streets, whether such

improvements consist of grading, paving, ditching, or any-thing else.

The second section of the charter also provided that the people residing in the city should become a body politic and corporate, and in and by their corporate name should be able and capable in law and equity, "generally to do all other acts and things which the good of the inhabitants of said city may require, not inconsistent with the constitution of the United States, or the constitution and laws of this State, and consistent with the objects of the corporation."

Construing all the sections of the charter together, they certainly give the common council power, incidental to all corporations, to pass appropriate ordinances. Dillon on Municipal Corporations, sec. 250. The order for improvements had to be made in some way, the assessment had to be made in some way, the charge had to be made in some way, and the lien had to be declared and enforced in some way; either by by-law, order or ordinance. See the case of. The City of Delphi v. Evans, 36 Ind. 90.

We think, under the provisions of the charter, the common council had the power to pass the ordinance.

The remaining question to be considered is in relation to the nunc pro tunc entry. The order for the improvement was passed in June, 1875. In August, 1875, the mayor and city surveyor made their reports to the common council, apportioning the cost of the improvement among all the lots and parcels of real estate fronting or adjoining Franklin street; that all the proceedings, including the reports of apportionment, were entered at full length on the minute book or record of the council. They show the total number of feet improved and the total cost of all the improvements, with each lot's share thereof. And no question is made as to the work being done according to contract; but it appears by a clerical omission, no order was entered on the minute

book assessing the several amounts against the several pieces of property chargeable with the costs of the improvements; although the report was approved by the council and an order passed charging against each lot its appropriate share of the expenses; that, on the 17th day of January, 1877, the action of the council, in approving the report and charging the cost of the improvements against the adjacent lots, was entered *nunc pro tunc*. By this entry it is found that the report was approved and the amounts assessed and charged against the appropriate lots, at the time the report was submitted, and by clerical omission this action of the council was not entered of record. And it is insisted by appellant's counsel that the common council had no right to make the said *nunc pro tunc* entry.

A liberal and favorable construction should prevail to support the proceedings of cities and towns, and this may well be the rule when no one is injured by it, or deprived of his rights; and especially, as in this case, when the object is only to declare of record as done that which was done. *Kellar* v. *Savage*, 17 Maine, 444.

A public corporation may, like every court of record, amend its record *nunc pro tunc*. Dillon Mun. Corp., sec. 234, note 1, and authorities therein cited.

In the case of *Jenkins* v. *Long*, 23 Ind. 460, this court used the following language: "The inherent power of the court was invoked—a power much older than the code—to make its record speak the truth as to what it had done, upon the suggestion that its ministerial officer, by mistake, had not correctly recorded its judgment actually rendered." *Burson* v. *Blair*, 12 Ind. 371. The authority to do this is as old as the reign of *Henry VI.*, and was then conferred by act of parliament, which is in force in this State. 1 G. & H. 415; 2 Tidd, 769; *Silner* v. *Butterfield*, 2 Ind. 24; *McManus* v. *Richardson*, 8 Blackf. 100. In the case of *Long* v. *The State*, 56 Ind. 133, this court

said: "If, in fact, the indictment in this cause had been duly returned into the court below by a proper grand jury, and the clerk of the court had failed to make the proper entry of such return, and if, in fact, the indictment had, since its return, been on file in the court, but the clerk had failed to mark it as filed, whenever these facts were brought to the knowledge of the court below, in our opinion, the court not only had the right and power, but it was clearly the duty of the court, in the administration of justice, to direct the making of a proper *nunc pro tunc* entry, to show the return and filing of the indictment, according to the facts of the case, as they previously existed." In this case the order was made, but no record made of it, and, according to the foregoing authority, it was not only the right, but the duty of the court, to order the record made *nunc pro tunc*. *Hunter* v. *The Burnsville T. P. Co.*, 56 Ind. 213 ; *Green* v. *White*, 18 Ind. 317 ; *Kambieskey* v. *The State*, 26 Ind. 225 ; *Uland* v. *Carter*, 34 Ind. 344 ; *Kent* v. *Fullenlove*, 38 Ind. 522 ; *Knight* v. *The State*, 70 Ind. 375.

In the case of *Smith* v. *The State*, 71 Ind. 250, we find the following language : "The rendition of a judgment and the entry of such judgment are different and distinct, each from the other. The former is the act of the court, while the latter is the act of the clerk of the court. *Anderson* v. *Mitchell*, 58 Ind. 592. It can not be doubted, we think, that the courts of this State are possessed of full and ample powers to correct mistakes and supply omissions in their records, whenever and wherever the records afford the means for making such corrections and supplying such omissions." See authorities in that case referred to.

In the case of *Knight* v. *The State*, *supra*, this court says : "That, where the record does not disclose upon what ground the court acted in correcting, modifying or vacating a judgment, this court will presume that the action of the court was based upon some good and sufficient reason. * * *

If, however, the entry complained of in this case had been made after the close of the term, we would still have to assume that it was made upon proper and sufficient evidence, as the evidence upon which it was made is not before us."

In the case of *The State* v. *Davis*, 73 Ind. 359, it was held that a writ was amendable by the court directing the clerk to affix a seal to it, and reference is made to the cases of *Miller* v. *Royce*, 60 Ind. 189, and *Newhouse* v. *Martin*, 68 Ind. 224.

The evidence is not before us, upon which the common council acted in making the entry in controversy. We are, therefore, justified in presuming that it had good and sufficient reason for doing so.

In the case of *The City of Logansport* v. *Crockett*, 64 Ind. 319, this court says: "But, in the case at bar, the clerk had omitted to record, and, of course, there was no record to be given in evidence or to be copied. But this state of facts did not necessitate a failure of justice, or a resort to parol proof. The common law pointed out the proper remedy; and perhaps it is not yet too late for the city to avail herself of it. A *nunc pro tunc* entry of the omitted proceedings might have been, perhaps may yet be, made. See the numerous cases collected in 1 Dillon Munic. Corp., chap. 11, sec. 231, *et seq.*" This was said nearly three years after the omission had been made. In this case the action of the council was had in August, 1875, and the amendment made in January, 1877.

We have thus far considered this amendment as a judicial act. But it is insisted by appellant's counsel that it was a legislative act, and as such was an *ex post facto* law, and therefore unconstitutional and void.

Law is a rule of action prescribed by the proper law-making authority, and, under the mixed powers of a city government, the common council may discharge legislative as well as administrative and judicial duties. But, if this

could in any view be considered a legislative act, we can not see anything in it that looks like making an act criminal, which was innocent when done, or increasing the punishment of a crime above what it was when the crime was committed. We do not think that it was liable to the constitutional prohibition against the passage of *ex post facto* laws.

It is further insisted that it is a legislative act, and could not have a retrospective operation so as to make valid that which before was invalid. Laws affecting the remedy, and curative statutes having a retrospective operation, have repeatedly been passed and held valid by all the courts of the country. And if this amendment could in any sense be regarded as a legislative act, it would certainly come under the class of curative remedial statutes the sole object of which is to have a retroactive operation, and it would be valid for that purpose. But we do not think the legislative powers of the common council of a city extend beyond the passage of by-laws and ordinances. Special orders, resolutions and motions belong appropriately to its administrative and judicial functions ; and the proceedings in relation to improvements may be had by orders, resolutions or motions. *The City of Indianapolis* v. *Imberry,* 17 Ind. 175 ; *The City of Delphi* v. *Evans,* 36 Ind. 90. And in the latter case this court has held, that "The making of the order for the improvement is a judicial act." This being true, the ordering of the allotted assessments to be charged as a lien upon the respective adjacent lots, and that collection be made from the owners thereof, would certainly be judicial acts, and subject to a *nunc pro tunc* entry.

And if the general ordinance of 1859 had not been in force at the time the improvements were ordered, and there had been no new general ordinance upon this subject passed under the amendment of 1875, the amendment itself being in force, the special orders in relation thereto, not being inconsistent with the provisions of the amended ,charter, would

Chamberlain *v*. The City of Evansville.

have been sufficient to put into operation and enforce the provisions of the amended charter, and would have a like effect of an ordinance, when there was no ordinance in force in conflict therewith. And especially would this be the case under the curative clause of the amended charter, which reads as follows : "And no informality of any order of the common council, * * in the making of the assessment and apportionment of the costs and expenses of the same upon such lots, or parts of lots, * * shall * * afford the defendant a defence in any action for the collection of any such costs and expenses, or for the enforcement of the lien therefor, provided, such improvements or repairs are made in substantial conformity with the provisions of this act."

There is no claim that the improvements were not ordered by the council, or that the work was not honestly done in accordance with the terms of the contract, or that the proceedings were not substantially in conformity with the provisions of the charter, except, as is contended for, that the council had passed no new general ordinance under the amended charter providing for such improvements, and that it had no right to make the *nunc pro tunc* entry.

We think this work was done in good faith, and the owners of the adjacent property ought to pay for the benefits received ; that these objections are not well taken.

There was no error in the overruling of the demurrers to the complaint, in sustaining the demurrer to the second paragraph of the answer, or in overruling the motion for a new trial. This case was fairly tried, and a just result reached. The judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and the same is hereby, in all things affirmed, at the appellant's costs.