THE BLACK RIVER IMPROVEMENT COMPANY, Appellant, vs. HOLWAY and another, Respondents.

*April 12 — May 1, 1894.*

*Constitutional law: Special act extending life of corporation.*

An act extending the life of a corporation created by special act before the constitutional amendment of 1871 (art. IV, sec. 31, subd. 7), is not the granting of corporate powers or privileges within the meaning of that amendment, which prohibits the enactment of special or private laws for that purpose.

APPEAL from the Circuit Court for *La Crosse* County.
The complaint alleges, in effect, that the plaintiff is a corporation, existing and duly organized under and by vir-

tue of ch. 84, P. & L. Laws of 1864, entitled "An act to incorporate the *Black River Improvement Company;*" that since such organization such charter has been amended by ch. 447, P. & L. Laws of 1866, ch. 225, Laws of 1880, and ch. 263, Laws of 1882; that during 1864 more than 200 shares of the capital stock of said corporation were duly subscribed for and fully paid up, and all other requirements of said act and conditions precedent were fully complied with, whereby plaintiff became and was duly organized pursuant to said act in 1864, and has since continued to be such corporation, and as such to have and exercise all the rights and franchises conferred by said act and said amendments; that thereupon and thereafter the plaintiff entered upon the work of improving the navigation of said river and lakes within the limits prescribed in said act, and prior to January 1, 1893, actually and in good faith expended $100,000 in the improvement of the same within the counties of Clark, Jackson, Trempealeau, and La Crosse, by removing obstructions, breaking jams, deepening, widening, and straightening the channel thereof, erecting booms and building dams, as authorized by said act; that from year to year the plaintiff proceeded to prescribe a tariff of prices or tolls for running logs in said river within the limits authorized, and up to the time of the commencement of this action required the owners of all logs run in said river within such limits to pay said tariff of prices so fixed; that April 15, 1893, the board of directors duly fixed the tariff of prices or tolls for the running of logs at thirty cents per 1,000 feet, board measure, for sound logs, and fifteen cents per 1,000 feet, board measure, for culls; that before the opening of navigation in the spring of 1893 the defendants were the owners and in the possession of a large quantity of saw logs, which they placed in said river within the limits mentioned, for the purpose of running the same therein to La Crosse; that the defendants drove

The Black River Imp. Co. vs. Holway and another.

and ran to La Crosse, by and with the means, benefit, and assistance of the said improvements, 5,279,500 feet of good logs, and 1,294,090 feet of culls, whereby the defendants became and were indebted to the plaintiff, over and above legitimate deductions, in the sum of $1,719.04, which amount the defendants promised and agreed to pay to the plaintiff on demand; that September 18, 1893, the plaintiff demanded payment thereof from the defendants, but they have wholly neglected and refused to pay the same, or any part thereof, and there is now due and unpaid to the plaintiff from the defendants, on account of said tolls, the sum of $1,719.04, with interest from September 18, 1893, for which amount the plaintiff demands judgment.

To such complaint the defendants demurred on the grounds: (1) That the plaintiff has not legal capacity to sue; that the charter of the plaintiff and its existence as a corporation expired prior to the commencement of this action, and prior to the accrual of the alleged cause of action. (2) That the complaint does not set forth facts sufficient to constitute a cause of action. From the order sustaining such demurrer the plaintiff appeals.

For the appellant there was a brief by *Losey & Woodward* and *E. C. Higbee*, and oral argument by *G. M. Woodward*.

For the respondents there was a brief by *M. P. Wing*, attorney, and *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and oral argument by *F. C. Winkler*. They cited *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 558–561, 577; *Kimball v. Rosendale*, 42 id. 407; *School Dist. v. Ins. Co.* 103 U. S. 707; *State ex rel. Church Mut. Ins. Co. v. Cheek*, 77 Wis. 284, 287; *Stevens Point Boom Co. v. Reilly*, 44 id. 295; *Kenosha, R. & R. I. R. Co. v. Marsh*, 17 id. 13, 16; *Ex parte Pritz*, 9 Iowa, 30; *Davis & Bro. v. Woolnough*, id. 104; *Baker v. The Steamboat Milwaukee*, 14 id. 214; *McGregor v. Baylies*, 19 id. 43; *San Francisco v. Spring V.*

*W. Works*, 48 Cal. 493; *Spring Valley W. Works v. Bryant*, 52 id. 132; *Low v. Marysville*, 5 id. 214.

CASSODAY, J.   The original charter of the company went into effect March 1, 1864, and, among other things, provided that it should be " a body corporate and politic by the name and style of the *Black River Improvement Company*, and by that name shall have succession and continue for twenty-five years." Sec. 1, ch. 84, P. & L. Laws of 1864.   In the same act it is " declared that in the judgment of the legislature the objects of this corporation and this act cannot be obtained by or under any general laws." Sec. 14.   By the act which went into effect May 25, 1866, the first section of the original charter was amended, among other things, so that the corporation should " have succession and continue for ·twenty-five years."   Such twenty-five years would have terminated May 25, 1891, and before the cause of action in question accrued.   Ch. 263, Laws of 1882, provided that the original charter " and the several acts amendatory thereof, and all the rights, powers, privileges, and duties of the *Black River Improvement Company*, organized and existing under said acts, are hereby continued· in full force and effect for the full term of twenty-five years from and after March 1, 1889," which is the date at which the original charter, had there been no amendments, would have expired.   The only question presented for determination upon this appeal is whether ch. 263, Laws of 1882, was within the constitutional power of the legislature to enact.

Undoubtedly the decision in *Dartmouth College v. Woodward*, 4 Wheat. 518, led to the conclusion that the grant of corporate franchises by the state to a private corporation, without reservation or condition, and its acceptance as such, constituted a contract which the legislature of the state could not subsequently impair by repeal, alteration,

The Black River Imp. Co. vs. Holway and another.

or amendment, by reason of the prohibition in the federal constitution (art. I, sec. 10). *Pennsylvania College Cases*, 13 Wall. 212–214; *Railroad Co. v. Maine*, 96 U. S. 507. To obviate such difficulty it became quite common to insert a clause reserving such power in the charter itself. To avoid all uncertainty on the subject, it was expressly provided in our state constitution that: " Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes and in cases where in the judgment of the legislature the objects of the corporation cannot be attained under general laws. All general *or special acts*, enacted under the provisions of this section, may be *altered or repealed* by the legislature at any time after their passage." Sec. 1, art. XI, Const. As indicated, the objects of the original charter were such as, in the judgment of the legislature, could not be obtained under any general law; and it was amended in 1866, extending the period of its existence for about two years. About seven years after granting the original charter, the constitution was amended so as to prohibit the legislature " from enacting any special or private laws for granting corporate powers or privileges, except to cities." Art. IV, sec. 31, subd. 7. At the time of the adoption of that amendment, numerous corporations existed in this state under special charters, and the question soon arose as to whether, after the adoption of that amendment, such special charters could be altered or repealed by special acts. It would seem that some of them were of such a nature as to render it impracticable to alter or amend them in some particulars by any general law; and certainly no one ever contemplated that they should all be repealed by a general law. The only practical way of altering or amending such prior special charters, in certain particulars, was therefore by special acts. The question recurs as to whether the power

to so alter or amend by special act was taken away by the amendment to the constitution.

That was one of the most important of the questions that confronted this court nearly twenty years ago in the celebrated railroad cases. It was there in effect held that the constitutional amendment against such special acts was prospective in its operation; that it "relates only to acts of incorporation thereafter to be granted, and does not impair the power of alteration or repeal, reserved to the legislature by the state constitution, in respect to charters granted prior to such amendment." *Attorney General v. Railroad Cos.* 35 Wis. 427. In the opinion of RYAN, C. J., in that case it is, among other things, said: "The difficulty of altering special charters by general laws which shall be uniform throughout the state is very apparent. . . . But the purpose of the amendment, so far as it affects sec. 1, art. XI, appears to us very manifest. It was designed to act on the *first clause only* of the section, taking away the legislative discretion, and changing the directory provision into a prohibitory one; and *not to touch the second clause* of the section at all, leaving the reserved power where it found it, to be exercised thereafter, as theretofore, upon special charters, *by special acts.* The amendment is prospective only, not retrospective. It prohibits an old way and provides a new way of *creating corporations, but was not designed to affect existing corporations in any way.* . . . We can see nothing in the letter or spirit of the amendment to warrant us in giving it a construction to impair the reserved power. Under the rule of constructive repeal we are bound to give such construction to these constutional provisions as will leave both to stand together. It is not for us to wrest so great a power from the legislature by construction, unless the legislature and the people have made such construction inevitable. And we feel bound to hold, and find no difficulty in holding, the phrase

in the amendment ' to grant corporate powers or privileges' to mean *in principio donationis*, and equivalent to the phrase 'to grant corporate charters.' This is implied, not only by the word 'grant,' but also by the word 'corporate.' A franchise is not essentially corporate, and it is not the grant of franchise which is prohibited, but of corporate franchise; that is, as we understand it, franchise by act of incorporation." Pages 559, 560. Again he said: "The reserved power in our constitution is a positive provision entering into all charters under it, and must be construed as it is written. We cannot construe away its meaning, or hold it to mean something else, which we or others might consider wiser or better. We are bound, in our construction of it, by the very words used. . . . The power is limited by its own words only. Any limitation of it must come from those words. . . . The power to repeal can bear but one construction, for, in this use, the word has but one meaning. The power to alter depends on the meaning of the word 'alter.' To alter is to make different, without destroying identity; to vary, without entire change. A corporate charter of one kind cannot be altered to a charter of an entirely different kind. But a corporate charter may be altered so as to make it different in detail, so long as the general identity of the corporation remains; so that it is varied, without entire change." Pages 576, 577.

Such are the utterances emanating from this court nearly twenty years ago. Since that time the court has repeatedly, either expressly or by necessary implication, sanctioned such utterances. *Kimball. v. Rosendale*, 42 Wis. 416; *Stevens Point Boom Co. v. Reilly*, 44 Wis. 301; *Smith v. Sherry*, 50 Wis. 213. Other courts have construed such constitutional amendments against special legislation as not retroactive, but as applicable only to corporations thereafter created. *State ex rel. Circuit Att'y v. C. G. & S. L. R. Co.*

48 Mo. 468; *St. Joseph & J. R. Co. v. Shambaugh,* 106 Mo. 558; *State v. Ill. Cent. R. Co.* 33 Fed. Rep. 731; *Farnsworth v. Lime Rock R. Co.* 83 Me. 440; *Wallace v. Loomis,* 97 U. S. 146.

The adjudications cited sanction an exercise of such reserved power of the legislature in the making of amendments of an affirmative character, giving additional powers, as well as those of a negative character. The legislature of this state, relying upon such utterances of this court, and, as we must assume, in the belief that they possessed the power so to do, have passed numerous acts amending special charters granted prior to the constitutional amendment of 1871. That numerous investments have been made and large interests have grown up upon the assumption that such legislation has been valid, no one can doubt. Certainly such interests should not be destroyed unless the unconstitutionality of the act is free from all doubt. The original charter, as it had been amended, was in full force at the time ch. 263, Laws of 1882, was enacted. That act did not create a new corporation in any sense. It merely prolonged the life of an existing corporation which then had nine years more to run. It in effect amended the existing charter by striking out the date at which it was to expire and in its place inserting a different date. Under the power reserved in the constitution itself, the legislature were expressly authorized to alter or repeal that charter. Manifestly they made no attempt to repeal it nor to cut down its powers. They did undertake to alter it by providing that it should not expire until a more remote date. We cannot say that they did anything more than to alter it. Its name and identity and corporate powers continued after the enactment of ch. 263, Laws of 1882, substantially the same as before. By it there was no granting of corporate powers or privileges *de novo.* It was a mere alteration or change in existing powers. We must hold that an act

extending the life of a corporation created by special act prior tó the constitutional amendment of 1871 is not the granting of corporate powers or privileges within the meaning of that amendment.    What has been said has some support in *Franklin Co. Ct. v. Deposit Bank,* 87 Ky. 370; *Att'y Gen. ex rel. Mason v. Perkins,* 73 Mich. 303; *Green v. Knife Falls Boom Corp.* 35 Minn. 155.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with direction to overrule the demurrer and for further proceedings according to law.

PINNEY, J., took no part.

