(June 2, 1897.)

## IN RE RIDENBAUGH.

[49 Pac. 12.]

MUNICIPAL ORDINANCES—CONSTITUTIONAL PROHIBITIONS.—Section 2, article 12, of the constitution, prohibits municipal ordinances in conflict with the general laws of the state.

CHARTER OF BOISE CITY—ORDINANCES UNDER.—The charter of Boise City, and amendments thereto, authorize only such ordinances as are in harmony with the general laws of the state.

(Syllabus by the court.)

Original proceeding in supreme court. Petition for *habeas corpus*.

Alfred A. Fraser, for Petitioner.

The decision of this case depends entirely upon the provisions of the constitution and laws of this state, and the following are the provisions of the constitution to be construed by the court as throwing light on the question and showing the intention of the legislature in regard to Boise City charter. Article 11, section 2: "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal . . . . as are or may be under the control of the state. The above provision gives the legislature the right to pass a special law for a municipal corporation." (*Carpenter v. People*, 5 Pac. 828.) Article 12, section 1: "Cities and towns heretofore incorporated may become organized under such general laws whenever a majority of the electors at a general election shall so determine, under such provision therefor as may be made by the legislature." Article 21, section 1: "That no inconvenience may arise from a change of the territorial government to a permanent state government it is declared that all writs . . . . and rights of individuals and bodies corporate shall continue as if no change had taken place in this government." The charter of Boise City, which authorizes the city council to license gambling, was in full force and effect when the constitution was adopted; it has not expired by its own limitation, and if repealed at all, it must be by

virtue of the gambling law passed by the last legislature. The ordinance under which the license was issued in this case was passed under the old charter, and at the time of its passage it was not in conflict with any provision of the constitution, any state law or the city charter, and as an indication of the intention of the legislature, they, by a law four days the junior of the gambling law, again recognized the right of the city council to license gambling. (I refer to the amendment of the charter of Boise City.) As to what effect the amendment of the charter of Boise City had on ordinances passed under the old charter I refer the court to *Chamberlain v. City of Evansville,* 77 Ind. 543; *In re Hall,* 10 Neb. 537, 7 N. W. 287, a case in point. Therefore the only question in this case is, Did the gambling law, being a general law, repeal the provision of the city charter in conflict with it? We believe that under the authorities this question must be answered in the negative. (See *Wood v. Board of Commrs.,* 58 Cal. 561; *State v. Clark,* 54 Mo. 17, 14 Am. Rep. 471; *Davis v. State,* 2 Tex. App. 425; *Cunningham v. People,* 1 Colo. App. 155, 27 Pac. 949; *Territory v. McPherson,* 6 Dak. 27, 50 N. W. 351; *State v. Morristown,* 33 N. J. L. 57; *Mullin v. Noe,* 3 Ired. 493; *People ex rel Dean v. Commrs. Grand Co.* 6 Colo. 202.)

Attorney General McFarland, for the State.

No brief filed.

SULLIVAN, C. J.—This is an application for a writ of *habeas corpus.* The petitioner was convicted of the crime of conducting the gambling game of "faro," in Boise City, Idaho, under the provisions of an act entitled "An act to prohibit gambling, and to provide for the punishment thereof, and for other purposes," approved March 8, 1897. (Sess. Laws 1897, p. 53.) On the trial the petitioner relied on a license procured from the corporate authorities of Boise City. After the state had proved that the defendant had been conducting said gambling game, the defendant offered to introduce in evidence license numbered 225 of said city, which is as follows:

"BOISE CITY LICENSE.
"No. 225.
"Granted May 8, 1897, State of Idaho.
"Expires Aug. 7, 1897.
"This license is granted to Thomas Constance for faro, in Boise City, Ada county, state of Idaho, having paid the city clerk the sum of fifty dollars for one-quarter thereof, conformably with the laws of said state and ordinance No. 155 of Boise City, passed and approved January 7, 1895.
(Signed)     "H. E. NEAL,
"City Treasurer.
(Countersigned)     "ARCH CUNNINGHAM,
"City Clerk."

—as his justification for concluding said gambling game.  The court rejected said offered evidence as immaterial and no justification, to which ruling the defendant then and there duly excepted.  The defendant then offered in evidence ordinance No. 155 of said city, which is entitled "An ordinance licensing banking games at cards and the game known as 'American Tan,'" which proffered evidence was rejected by the court, for the reason that it was immaterial and no justification.  Said ordinance is as follows: "Section 1. There shall be levied and collected by the city auditor, as tax collector, licenses as follows: Sec. 2. From each and every person who keeps or runs, or in whose saloon, house or place of business is kept or run, in Boise City, Idaho, any faro, monte, American tan or twenty-one game, or any other banking game or games at cards, dice or other device, must pay a license of fifty dollars per quarter, or any less time, for each and every game," approved January 7, 1895.  Said ordinance contains two other sections, not necessary to be set forth here.  The defendant then offered in evidence an act of the state legislature entitled "An act to amend sections 3, 5 and 11 of an act incorporating the city of Boise," approved January 11, 1866, being sections 130, 132 and 138 of the Special and Local Laws of Idaho.  Said first-mentioned act was approved March .12, 1897.  The particular part of said act offered in evidence is as follows: "The mayor

and common council shall have full power and authority within Boise City . . . . to regulate and restrain, in their discretion, upon special application, to license and tax: . . . . Gaming and gambling- houses." The court rejected said offered act as immaterial, to which the defendant excepted. The defendant then rested. Thereupon the cause was adjourned to the following day, and the court on that day found the defendant guilty as charged in the information, and sentenced him to pay a fine of $200, and, in default of payment thereof, to be confined in the county jail one day for each two dollars of said fine. The fine not being paid, the defendant was thereupon confined in the county jail. He thereafter made application to be released on *habeas corpus.*

It is conceded by counsel that the decision of this case depends upon the provisions of the constitution and laws of this commonwealth. The city of Boise was incorporated by a special act of the legislature, approved January 11, 1866. (See Idaho Special and Local Laws, 1863-87, p. 22.) By the fourth subdivision of section 5 of said act, the mayor and common council are empowered to license gambling-houses. By the thirtieth subdivision of said section 5, the city council is empowered to make all needful by-laws, ordinances and regulations not repugnant to the constitution and the laws of the United States, or of this state. The authority of the city council, by ordinance, to license gambling-houses, continued, at least, to the eighth day of May, 1897, at which date a general law prohibiting gambling went into effect. Said act prohibiting gambling went into effect on May 8, 1897, and expressly repeals all acts or parts of acts inconsistent with the provisions of said act. (Sess. Laws 1897, p. 53.) It is also conceded that the only question for decision in this case is: Did the general law prohibiting gambling repeal that provision of the city charter empowering the city council to license gambling? Section 19 of article 3 of the constitution provides that the legislature shall not pass local or special laws in certain enumerated cases, one of which is for the punishment of crimes and misdemeanors. While it is true the legislature has not attempted to pass a local or special law against gambling, or for the punishment of an act made a crime by

said anti-gambling law, yet, if that law be so construed as to make an act lawful in one part of the state which is in another part made a misdemeanor, the result would be a local or special law. The legislature would then be enabled to do indirectly what it is prohibited from doing directly. But the legislature did not intend that said anti-gambling act should apply to only part of the state. It was intended as a general law applying equally to the entire state. Section 2 of article 12 of our constitution is as follows: "Any county or incorporated city or town may make and enforce within its limits, all such local, police, sanitary and other regulations as are not in conflict with its charter or with the general law." This provision of the constitution authorizes the council of Boise City to make and enforce ordinances that are not in conflict with the general laws, and forbids the making and enforcing of any ordinance in conflict with the general laws. The act amending sections 3, 5 and 11 of the charter of Boise City, approved March 12, 1897, provides that the city council may pass ordinances not repugnant to the constitution and laws of the United States, or the laws of this state necessary or convenient for carrying the powers and authority granted into effect. (See Sess. Laws 1897, p. 85.) Thus, it is shown by the original charter of Boise City, also by section 2 of article 12 of the constitution, and the act amending the charter of Boise City, that it was not the intention of the legislature or the framers of the constitution to empower the council of incorporated cities and towns to pass ordinances in conflict with the general laws of the state. The cardinal rule in construing constitutional, as well as statutory, provisions, is to discover and enforce the intention of those who made them. Said provision of the constitution, as well as the provisions of the original charter of Boise City, and as amended, are too plain to require construction. It was not the intention to permit or authorize the councils of incorporated cities to legalize, by ordinance, acts prohibited as criminal by the general criminal laws of the state, or to enforce ordinances in conflict with the general law. In case of a conflict the ordinance must give way. The ordinances authorized by the charter of Boise City must be in harmony with the general laws of

the state. On the point involved in this case, see Black on Interpretation of Laws, 116 et seq.; *Heinssen v. State,* 14 Colo. 228, 23 Pac. 995; *Ex parte Solomon,* 91 Cal. 440, 27 Pac. 757. The petitioner relies upon the authority of *Davis v. State,* 2 Tex. App. 425; *State v. Clark.* 54 Mo. 17, 14 Am. Rep. 471; 1 Dillon on Municipal Corporations, sec. 54; *Chamberlain v. City of Evansville,* 77 Ind. 542; and other authorities. If any of the said authorities are under a constitution like ours, or a charter like that of Boise City, we are not disposed to follow them. Some of said authorities are not under constitutions or laws like those of this state; hence are not in point. The judgment of this court is that the discharge of the petitioner is denied, and he is remanded to the custody of the sheriff of Ada county.

Huston and Quarles, JJ., concur.