(November 7, 1905.)

## BUTLER v. CITY OF LEWISTON.

[83 Pac. 234.]

CITY OF LEWISTON—VALIDITY OF SPECIAL CHARTER—CONSTITUTIONAL LAW—TITLE OF ACT—AMENDMENT OF CHARTER—ISSUANCE OF BONDS.

1. Under a special charter, the city of Lewiston is a legal munic-ipal corporation of the state.

2. The amendment of the special charter of the city of Lewiston by act approved March 9, 1903 (Sess. Laws 1903, p. 105), *held,* constitutional and valid.

3. The title to said act is sufficient and does not contravene the provisions of section 19, article 3 of the state constitution.

4. Under the provisions of the constitution the legislature has the power to amend the charter of the city of Lewiston in matters germane to the object and purposes of said charter.

5. Under the provisions of section 2, article 21 of the state con-stitution, all laws not repugnant to the constitution are continued in force until they expire by their own limitation or are altered or repealed by the legislature. That provision applies to all laws, special as well as general, continued in force after the date of the adoption of the constitution, and the word ''altered'' as used in said section means to make different without destroying identity, to vary without entire change.

6. The title to said act approved March 9, 1903, is sufficiently comprehensive to include all provisions germane to the city charter.

7. The existing city governments under special charters, at the date of the adoption of our constitution, were not abolished by the provisions of section 1 of article 12 of the constitution, but were

continued in force, and by the provisions of section 2, article 11 of the constitution, the power of the legislature to grant, extend, change or amend charters of incorporation by special laws was restricted to such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state.

8. By the proviso of section 3, article 8 of the state constitution, the provisions of that section are not applicable to the ordinary and necessary expenses of the city authorized by the general laws of the state.

(Syllabus by the court.)

APPEAL from the District Court of Nez Perce County. Honorable Edgar C. Steele, Judge.

Action to restrain the issuance of certain city bonds. Judgment for the city. Affirmed.

The facts are stated in the opinion.

R. E. McFarland, for Appellant, cites no authorities not cited in the opinion.

Eugene A. Cox, for Respondent.

The first question presented by appellant is: Is the said defendant, the city of Lewiston, a legal municipal corporation of the state of Idaho? This is sufficiently answered by this court in the case of *Wiggin v. City of Lewiston*, 8 Idaho, 527, 69 Pac. 286. Appellant next presents the question: Is that certain special act of the legislature of the state of Idaho, known as House Bill No. 104, amending the charter of said city of Lewiston, approved March 9, 1903, and found on page 105 of the Session Acts of the state of Idaho of 1903, unconstitutional or void? The act referred to is an amendment of the act passed upon by this court in the case of *Wiggin v. City of Lewiston*, cited above. In that case the court held that the city of Lewiston was legally incorporated by special act, and that its charter might be amended by special act. No question is raised as to the regularity of the passage of the act of 1903; and the court having already determined the authority of the legislature to enact laws of this kind,

it will be assumed, in the absence of an affirmative showing to the contrary, that the law was duly and regularly passed. (Mechem on Public Officers, par. 579.) Appellant asks: Does said act contravene or violate the provisions of section 19, article 3, of the constitution of the state of Idaho, by reason of its having twenty subjects instead of one? Provisions of an act may be numerous, but however numerous, if they can be, by fair intendment, considered as falling within the subject matter of the legislation, or necessary as ends and means to the attainment of the subject, the act will not conflict with the constitution. (*Pioneer Irr. Dist. v. Bradley*, 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295, citing *State v. Doherty*, 3 Idaho, 384, 29 Pac. 855.) Appellant's fifth question is: Does said special act contravene or violate section 1 of article 12 of the constitution of the state of Idaho? All cities existing in Idaho prior to the adoption of the constitution were existing under special laws. This section did not abolish all the then existing cities. It simply supplements section 2 of article 11. Appellant's sixth query is: Does section 3 of article 8 of the constitution of the state of Idaho prohibit the issuance of bonds to take up outstanding warrant indebtedness of the city of Lewiston incurred for current pay of officers and municipal expenses of the city? Section 3, to which appellant refers, contains a complete answer to his question. (*Miller v. School Dist.*, 5 Wyo. 217, 39 Pac. 879; *Palmer v. City of Helena*, 19 Mont. 61, 47 Pac. 209; *City of Los Angeles v. Teed*, 112 Cal. 319, 44 Pac. 580; *Aetna Life Ins. Co. v. Lyon Co.*, 44 Fed. 329; *Maish v. Arizona Territory*, 164 U. S. 599, 17 Sup. Ct. Rep. 193, 41 L. ed. 567; Hainer's Modern Law of Municipal Securities, par. 297; *Ball v. Bannock Co.*, 5 Idaho, 603, 51 Pac. 454; Simonton on Municipal Bonds, pp. 67-171; *Bannock Co. v. Bunting*, 4 Idaho, 156, 37 Pac. 277; *Dunbar v. Canyon Co.*, 5 Idaho, 407, 49 Pac. 409.)

SULLIVAN, J.—This action involves the legality of the proposed issue of bonds by the city of Lewiston to pay the warrant indebtedness of the city, amounting to $62,500.

Said indebtedness accrued on account of salaries of city officers, employees and other municipal expenses, excepting about $10,000 thereof, which was the amount of judgment obtained against said city. The cause was heard in the court below upon stipulated facts, and judgment was entered for the respondent city upon all of the points and questions raised by the facts. This appeal is from the judgment.

The questions submitted to the court below involve fifteen or more points, the first of which is whether the city of Lewiston is a legally organized municipal corporation of the state. That city existed under special charter granted by an act of the legislature of Washington Territory, approved January 15, 1863. Its corporate existence antedates the creation of the territory of Idaho by nearly three months, as Idaho Territory was organized by act of Congress, approved March 3, 1863. In *Wiggin v. Lewiston,* 8 Idaho, 527, 69 Pac. 286, this court, in effect, held that the city of Lewiston existed under a special and local law and that such law was not in conflict with the provisions of section 19 of article 3 of the state constitution, which prohibits local or special legislation upon the several subjects therein enumerated. As bearing upon this question, see *In re Ridenbaugh,* 5 Idaho, 371, 49 Pac. 12. The act granting a special charter to the city of Lewiston is not repugnant to any of the provisions of the state constitution. Section 2 of article 21 of that constitution is as follows: "All laws now in force in the territory of Idaho, which are not repugnant to this constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature." Under the organic act of the territory, the enactment of special laws was not prohibited. The special act granting a charter to the city of Lewiston was continued in force by the provisions of the constitution. Under the provisions of said section 2, all acts not repugnant to the provisions of the constitution were continued in force until they expired by their own limitation, or were altered or repealed by the legislature. The act granting such charter has not been repealed, but has to some extent been altered by amendment. The question as to whether

the legislature has the power to amend a special law will be discussed hereafter.

That part of said section 19 of article 3 involved in the question under consideration is as follows: "Sec. 19. The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . . Creating offices, or prescribing the powers and duties of officers in counties, cities, townships, election districts, or school districts, except as in this constitution otherwise provided." In connection with this section I will also here quote other sections bearing on this question. Section 2 of article 11 is as follows: "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be, under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created; provided, that any such general law shall be subject to future repeal or alteration by the legislature." Section 1 of article 12 is as follows: "The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns in proportion to the population, which laws may be altered, amended or repealed by the general laws. Cities and towns heretofore incorporated may become organized under such general laws, whenever a majority of the electors at a general election shall so determine, under such provision therefor as may be made by the legislature." I have no doubt that the legislature under the several provisions of our constitution above quoted has the authority to amend the special act granting a charter to the city of Lewiston as long as such amendment or amendments are germane to the object and purposes of such charter. In *Farnsworth v. Lime Rock R. R. Co.,* 83 Me. 440, 22 Atl. 373, the supreme court of that state held, under a constitution similar to our own, which requires the formation of corporations to be under general statutes, did not apply to a charter granted by the legislature before such constitutional amendment. The court said: "The legislature having granted a charter be-

fore 1875 (that being the date of the constitutional amend-
ment), may amend it (the charter) after that date, the amend-
ment being germane to the original act." Of course, such
amendment or amendments must relate to some subject within
the appropriate range of municipal control. The provisions
of said section 19, article 3, is a prohibition upon legislative
power as to all matters enumerated in said section, and pro-
hibits the enactment of local or special laws on the subjects
therein enumerated. This section differs from a similar
section in other state constitutions in some particulars. In
the former named constitutions is found a provision prohibit-
ing special laws where general laws can be made applicable.
In our own constitution local and special laws are prohibited
in regard to the matters therein specifically mentioned. The
prevailing spirit of most of the state constitutions is opposed
to special legislation. However, such spirit is not prohibitory
of all special legislation, but only of such as relate to certain
specified subjects and to such other cases as general laws can
be made applicable. Under the provisions of our constitution
the legislature is master of its own discretion in passing special
laws on subjects not prohibited by the constitution, and the
question arises in the case at bar whether the amendment of
the Lewiston city charter comes within any of the prohibited
subjects. The amendments relate to and are germane to the
purposes and objects of city government. Such amendments
are therefore germane to the object and purpose of said special
charter. Section 2 of article 21, above quoted, provides that
"all laws not repugnant to the constitution shall remain in
force until they expire by their own limitation or be altered
or repealed by the legislature." The words "limitation,"
"altered" and "repealed," I think, apply to all laws, special
as well as general, in force at the date of the adoption of the
constitution and not repugnant to any of its provisions. By
the provisions of that section the legislature has the right and
authority to alter any law which still remained in force after
the adoption of the constitution. What is the meaning of the
word "alter" as used in that section? It certainly means to
make different without destroying identity, to vary without

entire change. It certainly will not be contended, nor do I hold that a corporate charter of one kind can be altered to a charter of an entirely different kind. And it was held in *Attorney General v. Chicago etc. Ry. Co.,* 35 Wis. 427, as follows: "But a corporate charter may be altered so as to make it different in detail, so long as the general identity of the corporation remains; so that it is varied without entire change." (See, also, *Black River Imp. Co. v. Holway,* 87 Wis. 584, 59 N. W. 126, and authorities therein cited; also *De Hay v. County Commrs.,* 66 S. C. 229, 44 S. E. 790; *Brown v. City of Denver,* 7 Colo. 305, 3 Pac. 455.) In *Carpenter v. People,* 8 Colo. 116, 5 Pac. 828, it is held that a special charter may be amended by a special law where a general law cannot be made applicable thereto. Under the provision of section 2, article 11, to wit: "No charter of incorporation shall be granted, extended, changed or amended by special law except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under control of the state," is the same as section 2 of article 15 of the constitution of the state of Colorado, and that provision of the Colorado constitution was considered by the supreme court of Colorado in the last case above cited. It was sought in that case to have the court construe the words "municipal corporation" as meaning "quasi municipal corporation," which the court refused to do. The title of the chapter in which said section 2 is found is, "Corporations, public and private," and clearly includes all corporations therein named. It was sought in the Colorado case to have the court construe the words "under the control of the state" to mean "under the ministerial control" and not the "legislative control." That the court refused to do, and in that case the court held the amendment to the charter of the city of Denver valid. (See, also, *Rogers v. People,* 9 Colo. 450, 59 Am. Rep. 146, 12 Pac. 843; *State v. Hitchcock,* 1 Kan. 178, 81 Am. Dec. 503. As to the authority or power of the legislature to pass special laws under constitutions similar to our own, see *State v. County Court of Boone County,* 50 Mo. 317, 11 Am. Rep. 415; *State v. County Court of New Madrid,* 51 Mo. 82.)

I am aware that courts of Iowa, Indiana, Maryland, and perhaps other states, have held that special charters could not be amended under the provisions of the constitutions of their several states; but so far as I have examined, the provisions of the constitutions of those states differ from the provisions of our own constitution.

Section 1, article 12 of the constitution, above quoted, provides for the incorporation, organization and classification of cities and towns by general law, and that such general laws may be altered, amended or repealed by general laws. It also provides that cities and towns incorporated prior to the adoption of the constitution may become organized under such general laws whenever a majority of the electors at a general election shall so determine under such provisions as may be made by the legislature. The legislature of this state has not enacted any law providing the method or manner of such change. I take it from all of the provisions of the constitution above quoted that the framers of our constitution intended to authorize the amendment of special laws within the scope and purpose of such laws. While it might be well for the legislature to submit acts passed for the amendment of special charters of cities to the electors of such cities prior to their going into effect, our constitution does not, in terms or by implication, require that to be done.

It is also contended that said act violates the provisions of section 16, article 3 of the constitution by reason of its having more than one subject. Said section of the constitution is as follows: "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title." The title of said act is as follows: "An act to amend an act entitled 'An act to amend the charter of the city of Lewiston,' approved February 9, 1881, and to amend an act entitled [here contains a designation of the several acts affecting and amending the chater of said city] and establishing a new and complete charter for said city."

The title covers more than a page of printed matter, and is sufficiently full and complete to include every provision in said act.   The act contains nothing not germane to the general subject expressed in the title.   In *Pioneer Irr. Dist. v. Bradley,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295, this court said: "Provisions of an act may be numerous, but however numerous, if they can by fair intendment be considered as falling within the subject matter of the legislation or necessary as ends and means to the attainment of the subject, the act will not conflict with the constitution."   The act unde  consideration amends a city charter, and the title is sufficiently comprehensive to include all provisions germane to a city charter.   In *State v. Doherty,* 3 Idaho, 384, 29 Pac. 855, this court said: "It [the title] is sufficient if the act treats of but one general subject and that subject is expressed in the title."   The title is sufficient.

The next question is, Does said act contravene or violate said section 19 of article 3 of the constitution of the state of Idaho, for the reason that it is a special act and prescribes the duties of city officers?   We have answered this question above by holding that said act is not in contravention of any of the provisions of section 19, article 3 of the constitution.

It is next contended that said act contravenes and violates the provisions of section 1, article 12 of the state constitution, which section is as follows: "The legislature shall provide by general laws for the incorporation, organization and classification of the cities and towns in proportion to the population, which laws may be altered, amended or repealed by the general laws.   Cities and towns heretofore incorporated may become organized under such general laws, whenever a majority of the electors at a general election shall so determine, under such provision therefor as may be made by the legislature." As heretofore stated, all cities existing in Idaho prior to the adoption of the state constitution were existing under charters granted by special laws.   The section last above quoted did not abolish the then existing city governments.   By the provisions of said section 2 of article 11, the power of the legis-

lature to grant, extend, change or amend charters of incorporation by special laws was restricted to such "municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state." The framers of the constitution evidently had in mind the fact that certain cities existed in the state under special charters, and it was the intention to permit such cities to remain under special charter if they desired to so remain. After having left the power to amend a special charter unimpaired, it was also provided by section 1, article 12 of the constitution for the incorporation of cities under general laws. That section contains a grant of power and a restriction upon the application of that power. Cities and towns theretofore incorporated by special act may become organized under the general city incorporation laws of the state whenever a majority of the electors shall so determine under such provisions of law as may be made by the legislature. The legislature has passed general laws for the incorporation of cities, but it has not yet provided a specific method for the surrender of special charters and a reorganization or incorporation under the general laws. The electors of Lewiston have never attempted to avail themselves of the provisions of the incorporation of that city under the general laws. In commenting upon the provisions of section 1 of article 12 of the constitution in *State v. Steunenberg,* 5 Idaho, 1, 45 Pac. 462, this court said: "The first part of said section clearly indicates that towns may be organized into cities under the general laws. In other words, the power is directly given by said section to the legislature to enact general laws for the incorporation of cities, towns, and villages, and to alter, amend or repeal such laws. . . . . The latter part of said section of the constitution points out a means by which towns or villages which have been incorporated prior to the adoption of the constitution may be organized into cities under such general laws. . . . . It is clear from the reading of said section of the constitution that the intention was to grant to towns theretofore incorporated the right to organize under any general laws passed by the legislature in pursuance to said section upon a majority vote of the legal electors of such town at a

legal election held therefor.''     There is nothing in said act in contravention of any of the provisions of said section.

The next question presented is, Does section 3 of article 8 of the constitution prohibit the issuance of bonds to take up outstanding warrant indebtedness of said city incurred for the current pay of officers and ordinary expenses of the city? Said section is as follows: ''No county, city, town, township, board of education or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from time of contracting the same.   Any indebtedness or liability incurred contrary to this provision shall be void; provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.''     The bonds proposed to be issued are to be issued for the purpose of funding the outstanding warrant indebtedness of the city.   Such bonds will not increase the legal indebtedness of the city, but simply change the form of existing indebtedness from warrant to bond.   Said section 3 of the constitution would be very clear and plain were it not for its proviso.   The section first provides that no city shall incur any indebtedness in any manner or for any purpose exceeding in that year the incoming revenue provided for it for that year, without the assent of two-thirds of the qualified electors voting at an election held for that purpose, nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay all interest on indebtedness as it falls due and to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the debt.   It also provides that any in-

debtedness or liability incurred contrary to this provision shall be void. Then comes the proviso to the effect that said section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state. This section is peculiarly worded, and the proviso is sweeping and includes all ordinary and necessary expenses authorized by the general laws of the state. That part of said section preceding the proviso evidently refers to indebtedness not included in the terms ''ordinary and necessary expenses authorized by the general laws of the state.'' The question arises, then, whether the warrant indebtedness which is sought to be changed to bonded indebtedness arose from the ordinary and necessary expenses authorized by the general laws of the state. It is stipulated that the said warrant indebtedness accrued on account of salaries of city officers and employees and other necessary and municipal expenses authorized by the general laws of the state of Idaho, excepting $10,000 thereof, which is evidenced by a judgment in favor of McClain and wife against the city of Lewiston, which judgment had been paid by city warrants. Certainly the salaries of city officials and employees and other necessary expenses clearly come within the proviso of said section, and as the judgment referred to was obtained by reason of a defective sidewalk in said city, the payment of that judgment was a necessary expense. We must conclude, therefore, that the proviso of said section 3 of article 8 of the constitution includes the said $62,500 indebtedness. It is clear from the provisions of said section it was intended that the annual revenue of each year, so far as necessary, should be applied to the payment of ordinary and necessary expenses of the city, and that whatever remained thereafter of such revenue might be expended, but that all indebtedness and liability incurred except as therein specified should be absolutely void. It must be borne in mind the issuance of said bonds was submitted to a vote of the electors of said city and carried by more than a two-thirds majority.

The remaining questions presented involve the validity of the city ordinances authorizing the submission of the question

of issuing city bonds to a vote of the electors of said city, the sufficiency of the notice calling the election, the legality of the election held, the authority of the city to issue such bonds, the validity and binding effect of the bonds, and the right of the appellant to the writ of injunction to restrain the issuance of such bonds and some other questions.    I have considered each and every of said questions, but do not consider it necessary to pass upon each *seriatim* in this opinion further than to say that after considering each of them I find on all of said points and questions in favor of the city and against appellant.    I find that all of the proceedings in regard to the issuance of said bonds are regular and legal, and that when issued they will become a valid and legal indebtedness against said city. The judgment of the district court must therefore be affirmed, and it is so ordered.

Stockslager, C. J., concurs.

Ailshie, J., concurs in the conclusion.